**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-20743-CR-SCOLA/TORRES

UNITED STATES OF AMERICA,

      Plaintiff,

v.

EMMANUEL JACKSON AND
TARRESSE LEONARD,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Emmanuel Jackson's ("Defendant" or "Jackson") motion to suppress [D.E. 38] physical evidence and statements protected under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The United States (the "Government") responded on March 4, 2019 [D.E. 49] to which Defendant did not reply. An evidentiary hearing was held on April 23, 2019 and Defendant's motion is now ripe for disposition.[1] Having carefully considered Defendant's motion, the Government's response in opposition, the testimony of the witnesses, the oral arguments of counsel, and being fully advised in

---

[1]     On March 5, 2019, the Honorable Robert N. Scola referred Defendant's motion to the undersigned Magistrate Judge for disposition.   [D.E. 39].

the premises, the Court recommends that Defendant's motion be **DENIED** for the reasons set forth below.

## I.   BACKGROUND

On May 18, 2018, Detective Stanley Paul-Noel ("Detective Paul-Noel") of the Miami Police Department was conducting surveillance in an unmarked vehicle for an unrelated narcotics investigation near the corner of Southwest 37th Avenue and Florida Avenue.   While doing so, he observed Jackson walking with a firearm in his hand towards a small crowd of individuals who had gathered near the southeast corner of 37th Avenue and Florida Avenue.   As Jackson approached the crowd, Detective Paul-Noel claims that Jackson raised the firearm and pointed it in the direction of individuals standing on the corner.   As the crowd began to disperse, Jackson placed the firearm in his waistband, took off his shirt, and walked towards 3675 Florida Avenue, Miami, Florida (the "Residence").   Tarresse Leonard ("Mr. Leonard") and another individual accompanied him.

As a precautionary measure, Detective Paul-Noel did not immediately intervene.   Instead, Detective Paul-Noel called for reinforcements and Detective Adrian Valle ("Detective Valle") arrived on the scene within sixty seconds.   The two detectives then followed Jackson to place him under arrest.   The detectives verbally identified themselves and shouted commands for the three men to stop.   When Jackson noticed the detectives, he ran towards the Residence and Mr. Leonard tossed

a large freezer bag of marijuana on the ground.    Afterwards, the three men ran into the Residence.

The detectives chased the three men into the Residence.   They apprehended Jackson in the living room and immediately placed him under arrest.   A few moments later, Officer Yader Somarriba ("Officer Somarriba") arrived on the scene and conducted a pat-down search of Jackson's person.   Officer Somarriba recovered a black 9mm handgun from Jackson's waistband.   Officer Somarriba also found a plastic bag of heroin and a yellow-tinted baggie containing pieces of Xanax bars in Jackson's front right pocket. While taking Jackson into custody, Detective Paul-Noel noticed a clear plastic bag containing crack cocaine in the living room in plain view. Meanwhile, Mr. Leonard ran to the east bedroom of the Residence.[2]   The officers directed Mr. Leonard to come out of the bedroom and, when he complied, law enforcement placed him under arrest.

After taking the three men into custody, Detective Paul-Noel interviewed Defendant and Mr. Leonard.   During the interview, Defendant admitted that he was in possession of drugs and a firearm.[3]   Law enforcement then applied for and obtained a state search warrant.   In the execution of the warrant, law enforcement recovered a loaded pistol, baggies of cocaine, and crack cocaine in a child's bedroom.

---

[2]    The room that Mr. Leonard ran into is a child's bedroom.

[3]    The Government claims that it does not intend to use Defendant's statements in its case in chief at trial and therefore Defendant's motion to suppress these statements should be **DENIED as moot**.

3

On September 13, 2018, a federal grand jury indicted the three men and charged each of them as a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g) and possession with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).   Defendant and Mr. Leonard were also charged with brandishing a firearm in furtherance of a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## II.      ANALYSIS

Defendant's motion seeks two forms of relief.    Defendant seeks to suppress (1) items that law enforcement found on his person (including a firearm and ammunition), and (2) cocaine that was found on a sofa in the Residence.    Defendant argues that the detectives violated the Fourth Amendment because they did not obtain a warrant prior to their initial entry nor were there any exigent circumstances presented at time of Jackson's arrest.    The Government opposes Defendant's motion because Jackson lacks standing to raise a Fourth Amendment claim.    And, even if Defendant had standing, the Government contends that law enforcement had probable cause to arrest Jackson and make a warrantless entry into the Residence because of exigent circumstances.    We will discuss the parties' arguments in turn.

### A.      _**Whether Defendant has Standing**_

Defendant claims that the detectives unlawfully entered the Residence

4

without a warrant and that any evidence recovered must be suppressed. The Government's response is that, even if one accepts Defendant's argument entirely, the motion to suppress lacks merit because Defendant has no standing to challenge the officers' entry into the Residence. That is, the Government contends that Defendant had no reasonable expectation of privacy to trigger any protection under the Fourth Amendment because he did not own or rent the Residence. Because Defendant lacks standing to challenge the search of the Residence, the Government concludes that Defendant's motion cannot stand.

The Fourth Amendment guarantees that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Amendment applies "without regard to whether the government actor is investigating crime or performing another function," including acting as an employer. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010). "The Fourth Amendment's prohibition against unreasonable searches and seizures protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion." *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quotation marks omitted). In other words, the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the *invaded place.*" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation, internal quotation marks, and ellipses omitted). Accordingly, a defendant

5

has standing to challenge a search and seizure only if he "had a legitimate expectation of privacy in the property when it was searched." *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013) (citation and internal quotation marks omitted).

Warrantless searches and seizures inside a person's home are presumptively unreasonable. *See United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012). The curtilage of a home, "the private property immediately adjacent to a home, is entitled to the same protection against unreasonable search and seizure as the home itself." *United States v. Noriega*, 676 F.3d 1252, 1262 (11th Cir. 2012) (citation, internal quotation marks, and alterations omitted). The Supreme Court has defined the curtilage as the area around the home that harbors those intimate activities associated with domestic life and the privacies of the home. *See United States v. Dunn*, 480 U.S. 294, 300 (1987). This means that "[w]henever government agents enter into the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy." *United States v. Jackson*, 588 F.2d 1046, 1053 (5th Cir. 1979). "[W]here the premises searched is the dwelling or is owned or rented by, or is in the possession of the accused, he has standing to attack the search." *United States v. Bachner*, 706 F.2d 1121, 1126 n.6 (11th Cir. 1983) (quoting *State v. Leveson*, 151 So. 2d 283, 285 (Fla. 1963)).

However, in some circumstances, "a person may have a legitimate expectation of privacy in the house of someone else." *Carter*, 525 U.S. at 89. For example, "an

6

overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Id*. at 90 (explaining that the Fourth Amendment extends to overnight guests because "hold [ing] that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society"). "A defendant also may establish standing by demonstrating an unrestricted right of occupancy or custody and control of the premises searched; ownership is not required, but mere presence or even possession of a key is insufficient." *United States v. Merricks,* 572 F. App'x 753, 757 (11th Cir. 2014) (quoting *United States v. Sarda–Villa*, 760 F.2d 1232, 1236 (11th Cir. 1985)). Ultimately, a defendant bears the burden of proving a legitimate expectation of privacy in an area searched; if an individual fails to do so, the defendant cannot challenge the search. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978); *see also Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) ("[S]tanding under the Fourth Amendment is not jurisdictional; instead, we analyze it as a merits issue.").

In this case, there is no dispute that Defendant did not own or rent the Residence.[4] Defendant claims, however, that he had a reasonable expectation of privacy because he is familiar with the tenant who leases the home and he received a *six* second phone call immediately prior to his arrest on May 18, 2018. Defendant

---

[4]    A lady with the initials E.C. rents the Residence and lives there with her minor children.

7

therefore concludes that he had an unrestricted right of access to the property and that the officers entered the Residence unlawfully.

A case that directly forecloses Defendant's argument is the Eleventh Circuit's decision in *United States v. Merricks*, 572 F. App'x at 757. In *Merricks*, the defendant argued that officers were prohibited from entering a residence because – although he did not own or lease the home in question – he visited the home daily, occasionally used one of the bedrooms, possessed a key to the house, and stayed overnight three weeks prior to his arrest. The Eleventh Circuit concluded, however, that Merricks lacked a reasonable expectation of privacy because he (1) was not an overnight guest, (2) had not stayed overnight at the home for at least three weeks prior to his arrest, (3) had no unrestricted right of custody or control over the residence, (4) did not keep clothes at that location, and (5) did not receive mail there or pay rent. *See id*.

When compared to the facts of this case, the defendant in *Merricks* had a *far* stronger claim to a reasonable expectation of privacy than the one presented. Defendant merely hangs his hat on a six second phone call and his familiarity with the tenant of the Residence. This means that, unlike *Merricks*, there is zero evidence that Defendant visited the home frequently, used any of the rooms in the Residence, stayed overnight, or even owned a key. And there is no evidence in the record that Defendant meets any of the other criteria that the Eleventh Circuit considered in affirming the denial of Merrick's motion to suppress. Defendant's

argument therefore falls woefully short of any reasonable expectation of privacy because it is not even clear that Defendant was "present with the consent of the householder," when he received a six second phone call and ran through the front door.  *Carter*, 525 U.S. at 90; *see also Mays v. Davenport*, 560 F. App'x 958, 963 (11th Cir. 2014) ("[A] person who is merely present in another's dwelling . . . who is on the premises for a relatively short period of time, and who does not have a previous connection with the householder, has no legitimate expectation of privacy in the premises and a warrantless search does not violate his Fourth Amendment rights").  Accordingly, Defendant had no reasonable expectation of privacy in the Residence and lacks standing to challenge the officers' entry onto the property.[5]

### B.   *Whether Law Enforcement had Probable Cause to Arrest*

Assuming that Defendant has standing, he argues that the officers lacked probable cause to arrest him and enter the Residence.   Defendant relies, in part, on a video recording of a store's surveillance camera that he believes fails to show that any firearm was in his possession.  And, even if Defendant pointed a firearm, Jackson claims that doing so only amounted to a minor offense because (1) the detectives did not know whether he had a permit authorizing him to possess a weapon, (2) displaying a dangerous weapon is only a misdemeanor, (3) raising the

---

[5]    That finding ends the inquiry, except for the predicate question of whether there was probable cause to seize or arrest Defendant in the first place.  We find that there was for the reasons stated in the section that follows.

firearm was inadvertent, and (4) there was no hot pursuit as Jackson walked – not ran – back to the Residence before law enforcement identified themselves.

It is well established that, because of concerns for public safety and the expeditious apprehension of criminals, law enforcement with reasonable cause to believe that an individual has engaged in a crime may arrest without a warrant. *Carroll v. United States*, 267 U.S. 132, 156–57 (1925).   Probable cause exists where the facts and totality of the circumstances, as collectively known to the law enforcement officers and based on reasonably trustworthy information, are "sufficient to cause a person of reasonably caution to believe an offense has been or is being committed."   *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (quotation marks and citation omitted).   "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."   *Dist. of Columbia v. Wesby,* ___ U.S. ___, 138 S. Ct. 577, 586 (2018) (quotations omitted). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." *Id.* (quotations and citations omitted).

Here, Detective Paul-Noel observed Jackson walking towards a crowd and pointing a firearm at members of the public.   Detective Paul-Noel's observations equate to a belief that Defendant committed aggravated assault, which Florida law

defines as "an assault: (a) [w]ith a deadly weapon without intent to kill; or (b) [w]ith an intent to commit a felony."   Fla. Stat. § 784.021 (2000).   The statute further provides that "[w]hoever commits an aggravated assault shall be guilty of a felony of the third degree . . . ."   *Id*.   Defendant argues, on the other hand, that Detective Paul-Noel was mistaken in his observations because surveillance footage fails to show a firearm pointed at the public.

Defendant's argument is misplaced because, even if the video footage is unclear as to whether Defendant pointed a firearm, Detective Paul-Noel testified credibly that he saw Jackson commit a felony – not just a misdemeanor – and endanger the lives of others.   Detective Paul-Noel's actions after his observation are also consistent with his belief that he saw Jackson point a firearm because Detective Paul-Noel immediately requested backup from law enforcement.   He did not immediately approach the suspect before backup arrived.   In the meantime, he radioed in his description of Jackson, at the same time as he put on his armored vest to protect himself. The Court heard the radio communications that followed, all of which supported Detective Paul-Noel's version of events. The record evidence submitted and the Detective's credible testimony all show that, from the standpoint of an objective reasonable police officer, probable cause existed to warrant arrest (or at minimum seizure of the suspect under *Terry* to investigate further).

Not to be deterred, however, Defendant insists that Detective Paul-Noel was mistaken, and that probable cause could not exist.   If we assume for the sake of

argument that Defendant is correct and that Detective Paul-Noel was indeed mistaken, this does not mean that the arrest at the time lacked probable cause or that any evidence uncovered thereafter should be suppressed.   While probable cause requires more than mere suspicious, it "does not require convincing proof."   *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir. 1992). Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, [any mistaken arrest] would provide a cause of action for every defendant acquitted."   *Baker v. McCollan*, 443 U.S. 137, 145 (1979).   This means that probable cause does not require the same "standard of conclusiveness and probability as the facts necessary to support a conviction."   *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting *Wood v. Kesler*, 323 F.3d 872, 873 (11th Cir. 2003)).   It merely requires "a reasonable belief that a suspect had committed or was committing a crime."   *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000) (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)).   And if an officer makes an arrest "based on a mistake of fact, the only question is whether his mistake of fact was reasonable," as "[g]reat deference is given to the judgment of trained law enforcement officers 'on the scene.'"   *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (citation omitted).

Because Detective Paul-Noel testified credibly that he observed a felony being committed, acted in a manner consistent with that observation, and ultimately recovered a firearm on Defendant's person, we conclude that – irrespective of

whether Detective Paul-Noel was mistaken or not – he had probable cause to arrest Jackson as any mistake committed was reasonable given the facts presented. *See id*. at 1277 ("An officer's mistaken assessment of facts need not render his actions unreasonable because what is reasonable will be completely dependent on the specific and usually unique circumstances presented by each case.").

Indeed, this officer had *overwhelming* probable cause when compared to an officer in a recent Eleventh Circuit case, who arrested a suspect for possession of burglary tools, even though no burglary was in process at the time and the suspect was found with only a pry bar, sledgehammer and powered saw in his car when detained. *United States v. Becker,* No. 17-10902, 2019 WL 689799, at *2 (11th Cir. Feb. 19, 2019). Yet the Court of Appeals affirmed the denial of the motion to suppress because the officer had a factual basis to infer that there was a substantial chance that the suspect (who had a relevant criminal history) intended to or was in the process of committing a burglary using those tools. *Id*. As the panel opinion explained, "[o]fficers can infer that a defendant possessed the requisite mens rea giving rise to probable cause where that inference is reasonable under the totality of the circumstances." *Id.* (citing *District of Columbia v. Wesby,* 138 S. Ct. at 586).

By that measure, this is an open and shut case. The officer, who was well-positioned to observe what he testified to based on the video surveillance in the record, saw what to him appeared to be a gun in Jackson's hand as he confronted people standing near a grocery store. The gun appeared to be pointing at those

13

people for a moment.  That personal observation amply supported his conclusion that the suspect committed either a felony or a misdemeanor.  That is precisely what "probable cause" means.  *See, e.g., Virginia v. Moore,* 553 U.S. 164, 176 (2008) ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.").

### C.   *Whether Exigent Circumstances Existed*

The next inquiry is whether there were any exigent circumstances to allow law enforcement to enter the Residence.  *See United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983) ("A warrantless entry . . . must be justified not only by probable cause but also by exigent circumstances.") (citing *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir. 1983)).  Law enforcement is prohibited under the Fourth Amendment from making a warrantless arrest and nonconsensual entry into a suspect's home to make a routine felony arrest.  *See Payton v. New York*, 445 U.S. 573, 588–90 (1980).  An arrest may be made, however, if the officer has probable cause to believe that the suspect has committed an offense and where exigent circumstances exist which make obtaining a warrant imprudent.  *Id*. at 589.  The Government bears the burden of proving an exception to the warrant requirement. *See United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).

The exigent circumstances exception recognizes that a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant."  *Michigan v. Tyler*, 436 U.S. 499,

14

509 (1978). "The exception encompasses several common situations where resort to a magistrate for a search warrant is not feasible or advisable, including: danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (citing *Johnson v. United States*, 333 U.S. 10, 14-15 (1948) (listing situations falling within exigent circumstances exception); *see also United States v. Reid*, 69 F.3d 1109, 1113-14 (11th Cir. 1995) (upholding warrantless search of residence based on exigent circumstances arising from risk of losing evidence, risk of flight, and danger of harm to public or officers); *United States v. Forker*, 928 F.2d 365, 368-69 (11th Cir. 1991) (upholding warrantless search of vehicle based on mobility); *United States v. Tobin*, 923 F.2d 1506, 1510-11 (11th Cir. 1991) (upholding warrantless search of residence based on danger narcotics would be destroyed or removed); *United States v. Burgos*, 720 F.2d 1520, 1525-26 (11th Cir. 1983) (upholding warrantless search of residence based on threat of injury to neighborhood arising from defendant's stash of weapons); *United States v. Blasco*, 702 F.2d 1315, 1326 (11th Cir. 1983) (upholding warrantless search based on imminent danger of flight or escape); *United States v. Kreimes*, 649 F.2d 1185, 1192 (5th Cir. 1981) (upholding warrantless search based on hot pursuit and danger posited by possibility of armed fugitive remaining at large)).

"Factors that indicate exigent circumstances include: (1) the gravity or violent nature of the offense with which the suspect is to be charged, (2) a reasonable

belief that the suspect is armed, (3) probable cause to believe that the suspect committed the crime, (4) strong reason to believe that the suspect is in the premises being entered, (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or (6) jeopardize the safety of officers or the public." *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987) (alterations included) (citations omitted).   If no exigent circumstances exist, evidence obtained because of an unlawful search in a residence is subject to exclusion.   *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

There are at least two exigent circumstances that allowed law enforcement to enter and search the Residence without a warrant.   The first is the hot pursuit doctrine.   Under the hot pursuit doctrine, police officers may enter a home without a warrant when they are in hot pursuit of a fleeing suspect.   *See United States v. Santana*, 427 U.S. 38, 42–43 (1976).   A "hot pursuit means some sort of chase, but it need not be an extended hue and cry 'in and about [the] public streets.'"   *Id.* at 42–43.   This means that even if "the pursuit ended almost as soon as it began, it can nonetheless be characterized as 'hot pursuit.'"   *United States v. Ramos*, 933 F.2d 968, 972 (11th Cir. 1991).   The Supreme Court has indicated that a claim of hot pursuit is "unconvincing" where there was "no immediate and continuous pursuit of the petitioner from the scene of a crime."   *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

16

Here, the hot pursuit doctrine applies because the officers identified themselves, directed Defendant to stop, and Defendant fled toward the Residence. The officers then gave chase.  Defendant claims that there was no hot pursuit because he was already in the house when the officers said "freeze" and the officers' subjective belief that Defendant was fleeing cannot serve as a basis for the hot pursuit exception.  Defendant's argument is misplaced because the appropriate inquiry is "whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 548 (6th Cir. 2003) (quotation marks omitted).  And to that end, it is objectively reasonable for an officer to believe that he is engaged in a hot pursuit (even if Defendant believes otherwise) when he verbally announces himself, shouts commands for a suspect to stop, and the suspect continues to flee anyway.  Accordingly, the hot pursuit doctrines applies and the officer's entry into the Residence was lawful.

Another exigent circumstance that applies is the risk of harm to the public. Minutes before Defendant ran into the Residence, Detective Paul-Noel observed Jackson point a firearm at a crowd of people and flee into the Residence after law enforcement directed him to stop.  Given these facts, it was reasonable for law enforcement to believe that any persons inside the home could be in danger because of Jackson's prior use of a firearm and decision to flee.  Detective Paul-Noel testified

17

credibly that he believed Defendant's conduct evidenced a threat to the occupants of the house.   That belief was fully justified based on what the officer knew at the time.

Defendant claims, on the other hand, that there was no risk of harm because (1) he did not commit a serious offense with the pointing of a firearm, (2) law enforcement was unaware of whether he had a permit, and (3) he was only charged with a misdemeanor.   Thus, Defendant posits that the public safety exception does not apply.

Each of Defendant's arguments fail.   First, Detective Paul-Noel observed Jackson committing a felony under Fla. Stat. § 784.021 because Jackson pointed a deadly weapon at a crowd.   He thus had probable cause to arrest Jackson based on his perception of what he saw from his vantage point.

Second, it is immaterial whether Defendant had a valid permit or not because a permit does not allow someone to point a firearm at another individual in a threatening manner.   As the Supreme Court explained in *Virginia v. Moore,* it is not the province of the Fourth Amendment to enforce state law.   An arrest may be permissible under the Fourth Amendment because it was supported by probable cause, regardless of whether the arrest actually violated state law. 553 U.S. at 178. In *Moore,* police erroneously made an arrest for the misdemeanor of driving on a suspended license, in violation of a Virginia law that authorized only the issuance of a summons for the offense (and not an arrest), and during a search incident to the arrest, police found crack cocaine. *Id.* at 166-67. The Virginia Supreme Court

overturned the conviction on Fourth Amendment grounds, reasoning that the officers were not authorized to arrest Moore under state law and the Fourth Amendment did not permit searches incident to citation. *Id.* at 168. The Supreme Court disagreed and reversed, holding that so long as a reasonable police officer had arguable probable cause to arrest someone who committed an offense in his presence, that was sufficient.

Third, the decision of prosecutors to later charge Jackson with a misdemeanor as opposed to a felony is unpersuasive because it does not vitiate the probable cause determination at the time the detectives arrested him.   This means that "[w]hen an officer makes an arrest, which is properly supported by probable cause," the subsequent charge does not vitiate the arrest.  *See United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973).   So when Detective Paul-Noel observed Jackson point a firearm at a crowd of people, officers were justified in detaining him both before and after he fled inside the Residence.   They then were justified in entering the Residence to seize him, as well as to ensure that no others present in the house would be in danger.

In sum, Defendant's motion should be **DENIED** because law enforcement had probable cause to arrest Jackson and to enter the Residence to apprehend a suspect that posed a danger to the public.

## III.  CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to suppress [D.E. 38] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 1st day of May, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

20